IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE VARIABLE ANNUITY LIFE INSURANCE COMPANY,<br>    Plaintiff,<br><br>v.<br><br>PENCO, INC.,<br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-05-2763 |

## **MEMORANDUM AND ORDER**

This case is before the Court on Defendant Penco, Inc.'s assertion of privilege in response to discovery requests served by Plaintiff The Variable Annuity Life Insurance Company ("VALIC"). The issue has been fully briefed and is ripe for decision. Based on the full record and the application of governing legal authorities, the Court overrules Penco's assertion of attorney-client and work product privileges.

## **I.    BACKGROUND**

VALIC is a life insurance company that develops and markets retirement products and services. Penco is a third-party administrator specializing in the administration of certain employer sponsored plans.

In June 2005, Penco received a large number of requests from plan participants to "rollover" their investments into VALIC investment products. In response, Tom Freeman, Penco's President, directed Carol Hayward, a Penco employee, to interview

a random sampling of those plan participants who had requested the rollovers. Ms. Hayward asked a series of questions[1] to approximately twenty-five plan participants during telephone interviews. Ms. Hayward made notes of the interviews, including the questions asked and the responses given by the plan participants.

VALIC requested production of Ms. Hayward's interview notes. Penco declined to produce the requested documents, asserting the attorney-client and work product privileges.[2]

---

[1] It is unclear from the record who developed the questions asked by Ms. Hayward. VALIC states only that Ms. Hayward, at Mr. Freeman's instruction, questioned the plan participants. *See* VALIC's Brief [Doc. # 41], p. 2. Penco states, with no supporting evidence, that the questions were "written by Penco's counsel." *See* Penco's Response [Doc. # 45], p. 2. Mr. Freeman testified in his deposition that "We contacted participants to ask certain questions on a sample basis" but did not identify who drafted the specific questions. *See* Freeman Deposition, p. 290, Exh. A to Penco's Response. Ms. Hayward testified in her deposition that Mr. Freeman told her what she "should ask the participants" but did not testify whether Mr. Freeman gave her specific questions or simply described the information she should obtain. *See* Hayward Deposition, p. 111, Exh. A to VALIC's Reply [Doc. # 46]. Because VALIC seeks discovery of the questions asked by Ms. Hayward to third parties for a business purpose, the identity of the drafter of the exact questions is not material to the privilege analysis. To the extent it could be considered material, Penco has failed to carry its burden of proof on the issue.

[2] At a conference on February 2, 2006, the Court inquired about the continued viability of an "investigative privilege" under Texas law. VALIC represents in its Brief, and Penco does not dispute, that the investigative privilege was repealed in 1999.

## II.   ANALYSIS

### A.   Burden of Proof

The party asserting a privilege has the burden to demonstrate that the privilege exists under the circumstances presented.  *See In re Santa Fe Intern. Corp.*, 272 F.3d 705, 710 (5th Cir. 2001).  Courts typically hold that waiver is a negative burden that the privilege proponent must satisfy.  *See Merrill v. Waffle House*, 227 F.R.D. 467, 475 (N.D. Tex. 2005) ("Plaintiff has the burden of demonstrating that there has been no waiver of the privilege."); *see also United States v. Miller*, 660 F.2d 563, 570–71 (5th Cir. 1981) (holding that proponent of attorney-client privilege did not meet burden of proving that accountant's disclosure of documents to revenue agent did not constitute waiver), *vacated on other grounds,* 685 F.2d 123 (5th Cir. 1982); *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978) (holding privilege proponent has burden of proof on establishing the essential elements of the attorney-client privilege; the elements include showing that the client did not waive the privilege); *Ferko v. National Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 133–34 (E.D. Tex. 2003) (same).

### B.     Attorney-Client Privilege

To be protected by the attorney-client privilege, a communication must be confidential and between certain qualified persons. *See* TEX. R. EVID. 503(b).[3] These qualified persons include the attorney, the client, and their representatives. *Id.*

A communication is confidential if it is "not intended to be disclosed to a third person." TEX. R. EVID. 503(a)(5). In this case, there is no indication that the questions were not intended to be disclosed to a third person. Indeed, the questions were specifically intended to be disclosed to the plan participants contacted by Ms. Hayward.

Additionally, the questions and responses were not between qualified persons. Mr. Freeman directed Ms. Hayward to conduct the interviews. Ms. Hayward contacted the plan participants, a communication between a Penco employee and third parties. Although Penco argues that the communications with its plan participants are protected by the attorney-client privilege, Penco provides no legal support for its position that plan participants are among the group of people covered by Penco's (a plan administrator's) attorney-client privilege under Texas law. At best, the plan participants are Penco's business clients. At worst, they are Penco's potential

---

[3]     In civil cases in which the rule of decision is supplied by state law, an assertion of privilege is determined in accordance with that state's law. *See* FED. R. EVID. 501.

adversaries. Under no existing legal authority do the plan participants qualify as Penco, Penco's attorney, or their representatives.

Penco also argues, without evidentiary support, that the questions and answers from the participant interviews are protected by the attorney-client privilege because Penco communicated this information to its counsel. This argument fails, however, because the fact that Penco may have discussed the questions and answers with its attorney would not bring otherwise unprivileged communications within the privilege. *See Methodist Home v. Marshall*, 830 S.W.2d 200, 224 (Tex. App. – Dallas 1992, orig. proceeding) (one cannot bring communications within the attorney-client privilege by giving them to an attorney).

Having failed to show that the interview questions and responses are confidential or were between qualified individuals under Texas law, Penco's assertion of the attorney-client privilege is without merit and is overruled.[4]

### C.     Work Product Privilege

To qualify for the work product privilege, documents must be created in anticipation of litigation by a party or his agent. "'In anticipation of litigation' means

---

[4] The Court's ruling on the attorney-client privilege covers only the questions asked during the participant interviews and the answers given by the plan participants as reflected in Ms. Hayward's notes. Clearly, any communications between Penco employees and Penco's counsel regarding the proper course of action based on the results of the interviews could be protected as an attorney-client communication.

that the ***primary*** motivating purpose behind the creation of the document was to aid in possible future litigation." *Smith v. Texaco, Inc.*, 186 F.R.D. 354, 357 (E.D. Tex. 1999) (emphasis added).[5]  "Litigation need not necessarily be imminent to protect documents prepared by attorneys in anticipation thereof to be within the work product doctrine, as long as the ***primary*** motivating purpose behind creation of the document was to aid in possible future litigation." *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 131 F.R.D. 668, 670 (S.D. Tex. 1990) (emphasis added).  Documents created for a business purpose are not protected by the work product privilege. *See Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004) (documents created for a business purpose are not protected even though the "information developed . . . may be helpful in legal proceedings").

In this case, Penco has failed to show that the primary purpose behind the plan participant interviews was to aid in potential litigation.  Indeed, Ms. Hayward testified in her deposition that the questions were asked to determine whether the requested rollovers were "correct, proper, and within fiduciary standards." *See* Deposition of Carol Hayward, p. 111.  In its brief on the privilege issue, Penco confirmed Ms. Hayward's deposition testimony, stating that the interviews were

---

[5]  An attorney's work product is protected by Rule 26(b)(3) of the Federal Rules of Civil Procedure.

"conducted in furtherance of Penco's fiduciary responsibilities to the plan participants." *See* Penco's Response [Doc. # 45], p. 5.

Penco has not satisfied its burden to prove that the questions and responses during the plan participant interviews, as reflected in Ms. Hayward's notes, were created for the primary purpose of aiding in potential litigation rather than primarily for a business purpose. As a result, the documents are not protected by the work product privilege and Penco's assertion of that privilege is overruled.

### III.  CONCLUSION AND ORDER

Penco has failed to establish that the participant interview questions and responses are protected by the attorney-client or work product privileges. Consequently, it is hereby

**ORDERED** that Penco's assertion of privilege is **OVERRULED**. Penco is directed to produce Ms. Hayward's notes of the participant interview questions and responses by **March 17, 2006**.

SIGNED this **7th** day of **March, 2006**.

_____
Nancy F. Atlas
United States District Judge